The next case is U.S. Benny Krauss v. Colston, counsel, whenever you're ready, you may proceed. Thank you, Your Honor. Please accord, counsel, I'll apologize in advance for my hoarse voice. I am exactly in the same place. This is a relatively simple case from the defendant's perspective. The record in this case indicates that there was no service of process, i.e. no personal service of the defendant. And the only claimed substitute service is publication notes. And as the record indicates, what was purportedly publication notice was inadequate and did not comply with the law and therefore is void. First of all, as noted before, there was no personal service of process. Nowhere in the record is any claim that a process server or sheriff's deputy or the like handed a summons to either of the defendants. Because of that, the defendant attempted publication notice, and what they did that was improper is multiple. First, per the statute, in order to obtain publication notice, an affidavit noting due inquiry to attempt to even find the defendant must be filed in order to get permission from the trial court to attempt or to pursue publication notice. While the record indicates that an affidavit was filed, that affidavit does not indicate that there was any due inquiry into the location of the defendants. The most that that affidavit says is a conclusory, they either moved out of state or we don't know where they are. The record didn't give any last address. They did not give any last address, although I think you will find that the record indicates that a process server did attempt to serve the defendants at the such property. But the record will also indicate that there were affidavits on file from 2009 indicating that the defendants didn't live there anymore. This was not the first default judgment entered without notice. This is actually the second. In 2009, the original default was vacated because, again, they never served the defendants. So instead of attempting to locate where the defendants were, instead of simply picking up the phone and saying, Mr. Mack, can you give us a hint where we might serve the defendants, they just kept after a hiatus of several years for whatever reason. This isn't a 103B petition, so I'm not being critical of the fact that they didn't for several years try to serve the defendants. But the simple fact of the matter is going back to the same such property where the record indicates that the defendants didn't live is not due inquiry on where the defendants are. Again, they didn't contact me. There's no indication they checked any property records, voter registration records. There's no indication they looked on Facebook or the Internet or did anything other than just go to the subject property and try to serve the defendants there. The record also indicates that about the same time they were requesting leave for publication notice, I actually offered to arrange a time and place to allow them to serve the defendants. How is that shown in the record? There is a letter that I sent to the defendants that the defendants filed in the record that reflects that. I believe it is also contained in an affidavit that is in the record. So it's in the record multiple times, and I don't believe that is disputed. So the plaintiff attempted publication notice without due inquiry requirement being satisfied. Furthermore, publication notice per the statute 735 ILCS 5-2-602 requires the clerk of court to mail to the last known address a certification that the publication notice is taking place, last known address of the defendants. Okay, actually what it says is the clerk shall also within 10 days of the first publication of the notice send a copy thereof by mail addressed to each defendant whose place of residence is stated in such affidavit. Okay, so if they didn't state a last residence in the affidavit, the clerk doesn't have an address to mail a notice to, right? That would be the affidavit of the plaintiff attempting to get service by publication notice. If that affidavit does not contain that address, that would be accurate. However, I believe, although I cannot swear to it as I sit here right now, that the affidavit filed by the plaintiff did claim the last known address of the defendants. Okay, that's what I asked you a couple minutes ago, did it give a last known address? Okay, I misunderstood your question. Okay, okay, okay. I believe that the affidavit filed by the plaintiff did list the property address as the last known address, which means that the clerk should have mailed certification to that address and is required to note that fact in the record. I don't think the affidavit has to give it a last known address. What it says is, it says, and stating the place of residence of the defendant, if known, or that upon diligent inquiry, his or her place of residence cannot be ascertained. That's in the affidavit for publication. Right. So. It is our contention that certification or should have been mailed to the plaintiff somewhere, but we can get to the fine points of where. The simple fact of the matter is, it wasn't mailed anywhere. So it isn't a situation where, well, they mailed it to the wrong address. It's a mailed affidavit. And strict compliance as set forth by the Bell Federal Savings and Loan Case v. Horton, which is cited in the brief, is required for other than in-hand service and process. You can't fudge around the edges for substitute service. So what we've got is an inadequate reason because there was no due inquiry. There was no certificate mailed. They didn't call up anybody and ask, hey, can you give us a hint where we might find the defendants? That there's nothing in the record that said they did anything other than keep going back to the same property address that they knew as of 2009 the defendants didn't live in. Or at least they should have known in 2009 that the defendants didn't live there because there's affidavits in that effect. And they should have known in 2009 that the defendants didn't live there because there's affidavits in that effect. And they should have known in 2009 that the defendants didn't live there because there's affidavits in that effect. There are two parcels of property that are arguably at issue in here. They're near each other, but they're not contiguous. One is a piece of property that my clients indisputably owned when this mortgage took place. And the length of the mortgage document itself references that piece of property. But what the plaintiffs are attempting to foreclose upon is not that piece of property that my clients actually owned when the mortgage was entered into. And which is accurately described in the mortgage documents. Instead, they're seeking to foreclose upon a separate parcel of property that, as I said, is nearby, but is not contiguous with, is not adjoining, and which my clients did not even own at the time the mortgage was entered into in this case. I think it would be accurate to say that my client's parents at one time owned that other piece of property, but my client himself never did. And so what the defendant, or what the plaintiffs are saying, what the plaintiffs published in the newspaper for their publication notice was a property description not of the house property, but of the separate property that my clients actually owned, which is the inadequate for giving publication notice that they're intending to foreclose upon the house property. You can't say, published in the paper, we're intending to foreclose on parcel A and then foreclose on parcel B. It doesn't provide any notice. It's not strict compliance with the notice requirements. The plaintiff attempts to get around the fact that two different parcels, one that they're trying to foreclose on, one that my client's actually owned, by claiming that there was some sort of unilateral mistake, mutual mistake, that both parties entered into in describing the property in the mortgage document. Again, my clients didn't even own the house property at the time the mortgage was entered into. There was no mutual mistake there. There may have been a unilateral mistake by the bank as to what they thought they were mortgaging, but what's contained in the mortgage document is an accurate representation of the property that my clients actually owned at the time that they actually entered into the mortgage. There's no allegation of fraud here. There's no allegation that the bank was duped or tricked or there was any attempt to trick. The bank is simply saying both of us made a mistake. But I don't think that that's a plausible explanation when the defendants in this case didn't even own the piece of property that the bank is claiming now should have been mortgaged. The defendants did own the piece of property that actually was mortgaged. And the mere fact that the defendants in this case, six years or so after the mortgage was entered into, acquired this house property does not retroactively bring the house property that they didn't own six years earlier into a mortgage, especially when that mortgage doesn't even reference the house property acquired six years later. Whatever that situation is, it's not mutual mistake. And as I've noted before, there's been no allegation of fraud. What it is is at most a unilateral mistake on the part of the bank. And a unilateral mistake on the part of the bank does not give rise to reform of the mortgage to cover a piece of property that wasn't even owned by my client until the date the mortgage was issued. For the first time on appeal, the plaintiff brings up the doctrine of after acquired title. But as I noted in the brief, that wasn't raised in the lower court. So therefore, it should be weighed. But even if not weighed, the doctrine of after acquired title doesn't apply to unilateral mistakes on the part of the bank. The doctrine of after acquired title would apply, for instance, the mortgage originally contained the house property, and then later my client acquired it. That's a completely different scenario than my client doesn't own the property. The mortgage accurately describes the piece of property my client owns. Well, the doctrine of after acquired title applies when you convey something you don't own. Correct. And then later acquire it. Correct. Then it's reformed to include what you earlier conveyed because you acquired it later. But here the defendants never conveyed the subsequently acquired property in the mortgage. Correct. Is that right? So the doctrine of after acquired title has no application. Has no application. Final argument I would make here is that the wrong plaintiff filed his action in the first place. As this court held in the Benneview v. Nelson case, which is cited in the brief, and I think, Justice Thornton, you may have written it, in order to foreclose on a mortgage, you have to own a mortgage. I know it's a novel concept, but sometimes some of these banks don't give that. On the date that this case was originally filed and at the time the judgment was entered, the plaintiff in the case was Household Finance Corporation III. Household Finance Corporation III, according to the papers in the record, was not the mortgage holder either at the time, at least at the time judgment was entered in the trial court, and apparently at the time the admitted complaints were filed, probably at the time the original case was filed. There's been a substitution. We need more than probably in the record. Look, it definitely was not, according to the record, the holder of the mortgage at the time the judgment was entered. It definitely was not the holder of the mortgage at the time the second admitted complaint was filed. I believe a fair reading of the record was it wasn't even the holder of the mortgage at the time the case was filed, original. What that means is they've got a judgment. It's probably a void as opposed to a void of gold. I know there's a distinction here. But they've got a judgment entered in favor of a plaintiff who didn't own the mortgage, and while the case is on appeal, even though that issue was raised in the trial court, originally they substituted the parties to try to correct that error. I'm not sure that they substituted the correct party, but even if they did, substituting a correct party does not cure the fact that the original judgment was in favor of a incorrect. An assignment does not, you know, make an inadequate or inaccurate finding accurate or bring a void or avoidable judgment. Make it proper. You're saying that the mortgage was assigned to U.S. Bank before the judgment was entered. Assuming U.S. Bank is the proper, for purposes of your question, I'll assume that, yes. Okay. In other words, I mean, it would be one thing if it was assigned after the judgment to U.S. Bank, and then they substituted in as party on appeal. I agree with that. But you're saying the problem is it was assigned before, and so a plaintiff got a judgment who didn't own the mortgage at the time of the judgment. They did. Okay. Now, in this court, was a motion filed to substitute parties? Yes. And it was granted? Correct, over my objection. Okay. Go ahead. Unless there's any further questions, that is the crux of the defendant's argument, that there was inadequate service on a wrong property description and wrong plaintiff. And for those reasons, this court should reverse the judgment of the circuit court. I don't think there are any further questions. Thank you. Thank you. Counsel? Good morning, Your Honors. May it please the Court? Counsel. My name is Lou Manetti. I represent Plaintiff Appellee, U.S. Bank Trust, N.A. Your Honors, the circuit court had personal jurisdiction over the defendants in this matter, and the reformation order entered at judgment was proper, and the totality of the facts in this case demonstrate that. The defendants first participated in the judgment, participated in this case seven and a half years ago. In August of 2007, they filed a motion to continue the upcoming judicial sale. In their motion, they didn't mention jurisdiction. They didn't challenge jurisdiction. Their motion simply stated that they wished to reinstate. It also explicitly stated that the defendants, along with their son and his fiancee, were living at the subject property in Bartelsville, Illinois, and stated that because they wanted to reinstate, they requested a stay of 30 days from the trial. Days later, in September of 2007, they filed a suggestion of bankruptcy in the trial court. Again, they made no mention of jurisdiction, but they simply alerted the court to a bankruptcy that had been filed by the Colstons and asked the court again for a continuance in conformity with the bankruptcy. In their September 2007 bankruptcy, the defendants, in their petition schedule, which lists the creditors with secured loans, secured interest in the property, they name the subject mortgage as the subject of this cause of action, accurately state that it was originated in the year 2000, and then state in their bankruptcy schedules that it encumbers not a vacant piece of property but a residential property, specifically a two-story brick-and-vinyl home on five acres with a 24-foot by 24-foot garage. Let me make sure I understand, though. There was no legal description in this bankruptcy schedule. No. It's a description of mortgage holders and creditors with secured liens as opposed to non-secured creditors. They do go on to describe that the encumbrance that that mortgage covers, again, describing the 2000 mortgage, the mortgage in this case, does describe a home and a garage. Later, the service was quashed by the defendants, but it was quashed on the representation that in 2006, well before their participation in this case, that in 2006 they lived in Florida, not Illinois. That's the representation they made in their prior motion to quash. That motion to quash was granted, right? It was. It was granted in 2009. And that was after you claimed they appeared in the case and so forth. Yes. So the trial court rejected that idea that they had already appeared. Well, Your Honor, I don't believe those arguments were made at the time. The order is entered without a briefing schedule. No specific arguments were made, again, other than the arguments in the motion to quash itself. Again, not that they don't live there anymore, not in 2009. We do not live at the subject property in Bartelso. But that in 2006, before their participation, they lived in Florida. So after the service was quashed, the plaintiff files its amended complaint and they try service attempts nine times at the subject property. The day before, the service was unsuccessful, and so they attempted publication. The day before publication begins to run in the newspaper, the defendant's counsel reaches out to the plaintiff's counsel and states that here's this new address where you can serve my clients. Eight more attempts based on that notice. The plaintiff attempts service eight more times at this new property in Highland, Illinois. Service, again, is unsuccessful. Does the record reflect that counsel for the defendants offered to set a definite time, place, date for service to be had? Off the top of my head, Your Honor, there's nothing that explicit. The letter to my office says that he can now, he has his client's permission to tell us about this new address. I believe the same letter says he doesn't have the authority to voluntarily accept service or waive service on their behalf, but he says, I will give you the address where you can serve. Okay. It doesn't say we'll meet you at a certain location, date, time? No, it doesn't say we'll meet you at a nice location to serve. Again, the service attempts are unsuccessful, and so the plaintiff sends notes of the judgment and of the reformation to defendants and counsel 11 days before the hearing. The orders are entered. After judgment is entered. Okay. When the judgment was entered, who owned the mortgage? Your Honor, when the judgment was entered, Household Finance Corporation III, the prior plaintiff in this action, owned the mortgage. Okay. And the record will reflect that? Yes, Your Honor. The initial complaint, the complaint filed in 2006, doesn't have a note attached. But in the First Amendment complaint which was filed, it does attach to the note. It bears a special endorsement to Household Finance Corporation III. It says the note is on pay to the order of Household Finance Corporation III. It's dated by plaintiff and it's brief. And, again, I would note the issue of standing was raised for the first time in the second successive post-judgment motion and not even in the petition itself. It's in the reply to plaintiff's motion to strike that. Well, I'm hearing Mr. Maggs say that the record reflects that the mortgage was already assigned to U.S. Bank or somebody before the mortgage was entered, or before the judgment was entered. But you're saying, no, that's not accurate. It was assigned after the judgment was entered. Yes, Your Honor. I think the record bears that out. Mr. Maggs first brings this argument about standing, again, in reply in 2012 or 2013. In reply to plaintiff's motion to strike his post-judgment, successive post-judgment motion. And he specifically points to a filing that was made in the Post's bankruptcy, which stated that as of November 2013, U.S. Bank was the proper party plaintiff. He first made that assertion based on that bankruptcy filing. So it was well past the judgment's entry. I don't think anything in the record reflects U.S. Bank as a party before judgment. So the totality of the facts show two things. One, the defendants are pursuing this appeal off of a second successive post-judgment motion. And two, that reformation and jurisdiction was proper. As an initial matter, the record shows the defendants didn't pursue a timely appeal from their first post-judgment motion. There's no authorization in the code for a second successive post-judgment motion directed at a final judgment. And this applies to motions brought under 1203, 1301, and 1401. Here, the defendants' first post-judgment motion, which sought to vacate it, was denied in February of 2013. Their petition to vacate title brought under 1401 wasn't raised until seven months after their first post-judgment motion was denied. So a 2-1401 can be filed within two years. It can. And it's a separate proceeding. It is a separate proceeding, but again, the Bell Federal v. Bank of Ravenswood case, which is cited in plaintiff's brief, explicitly states that there's simply no authorization in the code for successive bites of the apple. Once you bring a post-judgment motion, that's it. There's no authorization for a second one. And that applies to all post-judgment motions, 1203, 1301, and 1401. And defendants can't escape this by claiming that the first post-judgment motion brought wasn't actually before the court because the filing fee wasn't paid. It didn't divest the court of jurisdiction. The court considered that first post-judgment motion and denied it. And it's even in the J.C. Penney v. West case cited by defendants. The court clarifies in a footnote that the defendant in that case, their 1401 petition was properly before the court, even though the defendant claimed that he never filed it. It was before the court because the court heard it, considered it, and denied it. And similarly here, you certainly see in the record, plaintiff responding to the first post-judgment motion on its merits. There's a hearing date set, and on that hearing date, the first post-judgment motion is denied by the court. And then nothing occurs for seven months when the defendant brings a second one. Turning to the substantive issues of the case, and specifically jurisdiction, the court had personal jurisdiction over the defendants through two means. Publication service authorized by the code, and the defendants' own actions here which submitted them to jurisdiction. Ballot service was had on defendants by publication. The plaintiff attempted nine service attempts at the subject property. And to correct a misstatement made by counsel in his presentation, he explains as if when the first motion of quash was brought, the defendants definitively said, we do not live at the subject property anymore.  What they said in their motion of quash was, we didn't live there in 2006. Again, towards the very beginning of the case, and well predating all their actions in this case. They never said in their first offering to quash service that they didn't live there now. And in fact, chronologically, what you have is you have the initial service on defendants against later quash. You have defendants coming in in 2007 and saying in their motion to continue sale, we live there now. We live there now with Eddie Colson Jr. and his fiance. And then nothing about where they currently live until the 2011 motion of quash, which states via affidavit that they then lived at the Beach Street address. And certainly nothing was given to plaintiff informing them of the new address until plaintiff, excuse me, defendants counsel sent the letter March 6th of 2012 stating that you can find my clients at this new address. So it wasn't in the record that they no longer lived there. So going back to the subject property was entirely proper. My client could not find the defendants at the subject property. And so a publication service was had. They filed an affidavit containing the required statutory language. And all that's required in the statutory language is for the affidavit to say that on due and diligent inquiry the defendants couldn't be found. That's the Bell Federal versus Horton case. There's no- It would be a lot better if you put the detail in there, wouldn't it? As far as the court actually making a determination of whether due diligence was used? Your Honor, yes. In certain jurisdictions it's part and parcel of what you need to offer that you need to offer specifics as far as where you went, when you went there, how many times, who you encountered. But in Section 2206 that is not the requirement of the section of the code requiring publication service. Again, certain jurisdictions have local rules that make you do more. But that wasn't required here. Additionally, claims continued efforts to look for defendants confirmed that on due and diligent inquiry they couldn't be found. Before the publication actually began to run, the day before, they received this letter. Based on that notification, my client went out to the new address eight more times, various points in the day. And again, couldn't find the defendants. This confirms that on a diligent inquiry the defendants simply couldn't be found, which is ultimately what is necessary to sustain publication service. Additionally, the defendants didn't properly challenge publication service. Law is clear that once a plaintiff files an affidavit in conformity with the statute on publication service, it's incumbent upon the defendants to file an affidavit showing that on due inquiry they could have been found. And as reflected in the King case, this can't be a conclusion. You can't make the bare claim on due inquiry I could have been found. Here, the defendants in their post-judgment motion claiming that service wasn't had simply claimed that they were living at the Beach Street address since March of 2010. But this is a similar argument that was rejected by the court in Hustle Finance v. Volpare, where the defendant's argument was basically, I was there the entire time I could have been found. And again, in the Waller v. Harrison case, the court specifically knows that the defendant didn't meet their burden to quash service because they didn't state what additional steps could have been taken. Additionally, the argument that the certificate somehow invalidates publication service. As pointed out by plaintiff in his brief, it was brought for the first time by defendants on appeal. And while Diaboli enjoys a certain position on appeal that the order of the circuit court can be affirmed for any reason, reflected by the record, the appellant does not enjoy such deference, and any argument that was not made in the trial court is deemed way. So it was raised for the first time on appeal, so it was improper. Additionally, as noted by plaintiff in his brief, if there are any gaps in the record, they are held against the appellant. So here, when defendant says that it was proven that mailing was never done, that statement goes a bit too far. The statute explicitly states that if the certificate is there, it's proof that it was done. The record doesn't have a certificate one way or the other, but what defendant is trying to do on appeal is to swap the burden and take a gap in the record, the absence of any certificate, and flip it around on the plaintiff, which can't be done given the gaps in the record. Additionally, their further argument about the counts alleging reformation weren't even before the court because the publication service listed the initial legal, the one acre legal in the mortgage. Again, raised for the first time on appeal. Additionally, the publication service under Rule 105 would only be necessary if the defendants were defaulted. They actually had a default order, which didn't apply here. They were duly sent notice of the amended complaint, both versions, the first and second. And service under 105 wasn't necessary, and it wouldn't have been a defect for the publication notice to defendants to only list the legal description as it then existed in the mortgage. Certainly, my client was seeking to reform that legal description because it was the intent of the parties all along to encumber five acres with a house with a garage on it, but it would have been improper in that legal description for publication to include relief my client had not been given yet, and it didn't meet all the requirements expressed in 206 of the code about publication. Additionally, their own actions submitted them to jurisdiction here. Their first offering in this case, again, seven and a half years ago, was a motion to stay sale. They then filed a motion, a suggestion of bankruptcy, again asking for a continuance. Finally, these motions submitted them to the court's jurisdiction prospectively on a going forward basis, but it did subject them to the court's jurisdiction. The defendant brings up the Mitchell, DAC v. Mitchell, and In Re Marriage of Verdun cases in the reply brief for the proposition that waiver, when you come to a case and don't challenge jurisdiction and do ask for relief while acknowledging the court's jurisdiction over you, it's only a prospective waiver and it doesn't validate orders entered prior to your submission. While that is true, that certainly happened here. Their offering in August of 2007 didn't challenge jurisdiction and, in fact, asked the court for a stay of 30 days because they were trying to reinstate. Because of this, they submitted themselves to the court's jurisdiction in August of 2007 going forward, prospectively. That's in conformity with the holding of the Mitchell and Verdun cases. And the fact that prior judgment, a judgment that was entered before their participation in this case and before they submitted themselves, the fact that that was later eviscerated because they moved across services, that's in conformity with Mitchell as well. Their submission in August of 2007, it couldn't validate that order entered before their participation. But once that order, which was the only order that was vulnerable to this type of attack, once that was vacated, they were in the case going forward. Additionally, as pointed out by the plaintiff in his motion to cite to additional authority, there's a recent amendment to the IMFL specifically limiting the defendant's time frame to bring a motion to quash. And this is reflected in the Greenpoint v. Pony Wozniak case. That case involved publication service. The defendant's file was made an appearance years before the amendment was filed. And the appellate court specifically upheld the denial of the motion to quash, saying that the court, the defendants needed to bring whatever challenge they were going to bring within 60 days of the statute's enactment. Here, you don't see that happening. The statute's enacted. The amendment occurs in August of 2011. Nothing happens on the defendant's part until December 2012. For those reasons, they did submit to the court's jurisdiction going forward, and they further cut off their ability to continue to allege lack of jurisdiction because of this amendment to the IMFL. Finally, the reformation order was entirely proper in judgment. This has nothing to do with the doctrine of after-acquired property, does it? The reformation, it does, Your Honor. I'm reading from your brief. It says the doctrine of after-acquired title provides that if a person sells or conveys to another an estate in land which the vendor does not possess, but then after the sale or conveyance, the vendor does become possessed of and confirmed in that legal estate, the vendor holds the subsequently acquired title. But it was never conveyed here. The only thing conveyed in the mortgage was the one acre, right? Which is why it becomes so important that my client move for reformation of the mortgage, Your Honor. That would be true. Answer my question. Is that right, though? The five acres with the house and so forth was not conveyed in the mortgage. It's not the land described in the legal description of the mortgage. Yes, Your Honor. Absolutely. So under the doctrine of after-acquired title, we're talking about circumstances where somebody conveys something they don't own and acquires it later. That didn't happen here. I believe it did, Your Honor. I believe the parties. Well, how can you say that? They didn't convey it. The legal description doesn't include it. But that they meant to, Your Honor. And that brings forth why reformation was appropriate. The defendants in the original lender always intended to encumber five acres with a house and a garage on the property where defendants were living at for a three-year period during this case. This is shown by a couple of things. One, the appraisals that were in the mortgage transaction that helped determine the value of the mortgage transaction. The appraisal uses the same legal description that's later used in the quit claim deed to give the defendants the five acres with a house and a garage. The appraisals state that the property that's going to be the subject of this mortgage transaction is sitting on five acres with a house and a garage. The appraisal for the mortgage that's being foreclosed. Yes. Well, the mortgage that was originated in 2000 says that the appraisal says this property is five acres with a house and a garage, and all the comparable properties used to assess the value of this loan transaction were five acres with a house and a garage. And importantly, the most important point is the defendants' bankruptcy and their bankruptcy petition schedule. They state under oath all creditors who have secured claims. And in that they mention that this lien, which is the only mortgage lien identified in their bankruptcy, they describe the encumbrance not on a vacant lot, but they say the encumbrance is a two-story brick and vinyl home sitting on five acres with a 24-foot by 24-foot attached garage. That shows their intent. It certainly shows their intent that they believe they encumbered those five acres with a house and a garage. Is the appraisal and the bankruptcy schedule in the record in this case? Yes. The appraisal is attached to this first and second amendment complaint, and the bankruptcy schedules are attached to plaintiff's motion to strike their second post-judgment motion. Do you agree they didn't own that property, though, at the time of the appraisal and the mortgage? I agree. How did they intend to encumber it through the mortgage when they didn't own it? Because they believed, it was their belief that the mortgage was encumbering that property, and they later came to the title. Your Honor, if I could just briefly, the Morango case that's cited in the latest brief, for the foregoing reasons, I believe the judgment of the circuit court should be confirmed. Thank you. Thank you, counsel. Counsel? Very briefly, at pages C-156. There's some water down there if you want to gather some. Thank you. At pages C-156 and C-426 in the record, the record indicates that while this case was pending in the circuit court, the mortgage was owned by Mortgage Electronic Registration System, Inc. The motion to substitute parties filed by plaintiff in this case does not reference an assignment from Mortgage Electronic Registration Systems, Inc. to anybody, and that is totally left out of the Lynch transfer. So the record in the lower court indicates that the mortgage was owned by somebody other than Household Finance, and for the motion to substitute parties was allegedly assigned to somebody other than, from somebody other than Mortgage Electronic, to someone. There is no indication in the record, no chain of title, as to who the actual owner of the mortgage is other than Mortgage Electronic Registration System, Inc., which has never been a party to this case, either in the trial court or in substituting on appeal. As far as counsel's argument that my clients waived their ability to challenge service of process because of the ongoing matters in the circuit court, as Justice Stewart noted, the original default was vacated in 2009. So anything prior to 2009 clearly doesn't count. But even if it arguably did, if my clients had entered their appearance sufficient to constitute participation in the case back in 2006, 2007, in any event, well before 2009, why is it that the defendant or the plaintiff kept trying to serve my clients at the subject property? If they were participating by entering the case in subject to the jurisdiction of the court, why are we even arguing about publication notice? The simple fact of the matter is they weren't served prior to 2009. They weren't served, at least personally, at any time. The publication notice itself is improper and therefore void, which means any judgment reliant on the void and improper publication notice is itself void or at least void at all. And there is no argument that my clients waited an inappropriate amount of time to raise the challenge as to the second 14-1 petition. Unless there's any further questions, I would ask that Your Honor reverse the circuit court and vacate the default orders. I don't believe there are. Thank you, Counsel. Thank you. We appreciate the briefs and arguments of counsel to take the case under advisement. Thank you.